**In the Matter of C.L.**

**No. 14–94–00939–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 3, 1996.

---

Rick Davis, Bryan, for appellant.

James W. Locke, Bryan, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

FOWLER, Justice.

This is an appeal from an adjudication of juvenile delinquency for the offense of aggravated assault. Appellant brings four points of error asking us to consider (1) whether the State made an improper jury argument; (2) whether the evidence is sufficient to sustain the jury's verdict; and (3) whether the trial

court erred in admitting appellant's oral statements after she was taken into custody. All of the points of error pertain to the adjudication hearing. We reverse and remand because we find the State made an improper jury argument.

## FACTUAL BACKGROUND

The State claims C.L., a fifteen year-old girl, engaged in delinquent conduct by assaulting her step-father. The State alleged two counts of aggravated assault and one count of attempted murder.

On April 13th, 1994, C.L. and T.L., her fourteen year-old sister, had an altercation with their mother and step-father. As punishment for earlier insolence, the parents, who were going to church, did not allow the girls to leave with them. Upon their return home, the parents found several of the step-father's belongings thrown out on the front lawn. Inside the house, a heated argument erupted between the four individuals. Holding a plate, the mother threatened to hit T.L. over the head. When T.L. brandished a knife at her mother, the step-father threatened to beat the girl. C.L. then went to the kitchen, picked up a knife, and engaged the step-father in a tussle. While fending off T.L., the much larger man wrestled C.L. to the ground and disarmed her.

The mother called the police, and the still hysterical girls were arrested. At their joint trial, the girls testified they feared for their safety. Defense counsel put on extensive evidence, including testimony by the girls' three siblings, of parental abuse. Showing his scars to the jury, one of the adult children graphically and emotionally testified of injuries inflicted by his parents. While the parents admitted hitting their children, they denied the severity of the beatings.

The jury found "true" to one count of aggravated assault with a knife, and "not true" to the other counts.

## IMPROPER JURY ARGUMENT

In her first point of error, appellant asserts the trial court erred in overruling her objection that the State's jury argument was improper.

In its argument, the State asked the jury to intervene in the abusive household by finding appellant delinquent. In reviewing this issue, we must determine whether the Texas Rules of Civil Procedure are applicable to juvenile delinquency proceedings. Before 1973, the legislature enacted Title 3 of the Texas Family Code, and replaced the "as far as practicable" limitation with the provision that "[e]xcept when in conflict with a provision of this title, the Texas Rules of Civil Procedure govern proceedings under [Title 3]." *See* TEX. FAM.CODE ANN. § 51.15; *Matter of M.R.*, 858 S.W.2d 365, 366 (Tex.1993) (per curiam). We find no conflict between the Family Code and Rule 269, the rule governing jury arguments in the Rules of Civil Procedure. We will, therefore, employ Rule 269 as the standard by which to examine the propriety of the prosecutor's jury argument.

Rule 269 requires attorneys to confine their arguments strictly to the evidence and arguments of opposing counsel. TEX.R. CIV. P. 269(e). Before a judgment may be reversed because of an improper jury argument, appellant must prove (1) an error, (2) that was not invited or provoked, (3) that was properly preserved by an objection, or a motion to instruct or for mistrial, and (4) that was not curable by an instruction, a prompt withdrawal of the statement or a reprimand by the trial court. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979). In considering whether the error was incurable, the appellate court must determine if it is more probable that the improper argument caused harm than that the verdict was based upon proper proceedings and evidence. *Id.* at 840. The appellate court must evaluate the improper jury argument in light of the whole case—from voir dire to closing argument. *Id.* Rarely will the harm turn out to be incurable. *Id.* at 839.

Appellant complains of the following jury argument made by the State at the very beginning of the prosecutor's closing argument:

[State] Why, in light of all the evidence that you heard in this trial, should you intervene in the lives of those two children over there and find that they committed the offenses that they're charged with committing? Why?

There's two reasons why you should intervene in their life. The first reason is because the facts on the night of April 13th warrant it. *And because if you don't intervene, number two, nothing is ever going to change.*

At this point in the State's closing, the defense objected to the argument that the jury should "intervene," and asked the court for a mistrial. The court sustained the objection but permitted the State to continue. Later, the prosecution revisited the theme of intervention and exhorted the jury to "help" C.L.

Is it fair to hold the girls responsible for the aggravated assault and the attempted murder? Is it fair—is it fair to them? That's got to be going through your mind, whether it's fair or not. It may not be fair. *It may not be fair, but something has to be done. Something has to be done. And you're in a position to do something for the girls. Now, if that means holding them responsible—*

[DEFENSE] Excuse me, Judge. I have to object to this. The State is suggesting that it would be a benefit to the girls to convict them. And they—they can only be convicted if the evidence warrants it. And this is, again, suggesting intervention, which is not—this is not the appropriate form [sic], Your Honor, and I object.

The court again overruled defense counsel's objections.

Appellant contends this is improper jury argument because it suggests the jury render a verdict to remove appellant from an abusive household instead of deciding whether she committed the offense with which she was charged. Claiming the prosecution did nothing more than argue for the care, protection, and wholesome moral, mental and phys-ical development of children, the State contends the argument was proper under the Family Code. *See* Tex. Fam.Code Ann. § 51.01. The State further contends the argument was proper because the Family Code anticipates "intervention" in the life of a child to attain the goals set forth in section 51.01. We disagree.

Looking to both rule 269 and *Standard Fire* for guidance, we first conclude the prosecutor did not confine his jury argument to the evidence as required by rule 269. In addition, his argument was not provoked or invited by the defense. We also find error properly preserved for our review because defense counsel made timely, appropriate objections to the State's improper jury argument. When the prosecution initially made the argument in controversy, defense counsel objected and asked for a mistrial. The second time the prosecutor made the argument, defense counsel, after a short delay, again objected, and argued the error could not be cured with an instruction. He then moved for a mistrial "on the basis that the State has suggested that a conviction ought to be rendered against these girls as a form of intervention into the household." The court again overruled his request.

To determine whether the error was curable, which is the final part of the *Standard Fire* test, we must assess the degree of harm the improper jury argument caused to the entire proceeding. *See Standard Fire Insurance*, 584 S.W.2d at 839. Two factors have a bearing on this issue. First, we cannot judge the impact of the argument without placing it in the context of the whole trial. We believe the comment made a great impact on the jury because the testimony elicited at trial would likely make the jury *want* to take C.L. away from her home. Counsel for both defendants elicited testimony from the State's witnesses about the abuse that all of the children and grandchildren in the household suffered at the hands of the mother and step-father. A former Children's Protective Services (CPS) worker testified about wounds and bruises she saw on the children

after the family was referred to CPS. She stated the children were not removed from the home because the family agreed to enter a counseling program. CPS records documenting parental abuse were also admitted into evidence. Five of the children, including the defendants, testified about beatings and displayed scars from old wounds inflicted by the parents. The children also recounted tales of their parents' abuse of the grandchildren. The picture painted for the jury by the defense and acknowledged by the prosecutor was of a family torn apart by fear, anger and abuse.

The second event of significance to our determination of harm is the prosecutor's cross-examination of C.L., which planted a seed in the jurors' minds and set the stage for the prosecutor's argument that the jury should intervene in C.L.'s life. The cross-examination was short and simple, and carried an unmistakable message. Save for the preliminary questions, we set forth the entire cross-examination of C.L. by the prosecutor.

Q: And you're fifteen years of age?

A: Yes.

Q: And did you know that your mother and Rufus [the stepfather] have legal responsibility for you until you're eighteen years old? Do you know that?

A: Yes.

Q: And if you're released from detention, your parents are required to take care of you. Do you know that?

A: Yes.

Q: If you go home from detention today or tomorrow or whenever, you're going home to 1115 Berkeley. Do you—

Counsel for C.L. objected to the line of questioning, stating that it was designed to convert the trial into a procedure for taking C.L. out of an abusive home rather than adjudicating her a delinquent. The court overruled the objection.

Our review of the record leads us to conclude that these events and the evidence, in conjunction with the improper jury argument, more likely produced a verdict based on a desire to get C.L. out of her home rather than a decision to vote true because she committed the acts.

The State maintains that it was appropriate for the prosecutor to argue for intervention, pointing out that the goals of section 51.05 anticipate intervention in the life of a child "to effect a change," as the State puts it. *See* TEX. FAM.CODE ANN. 51.01.

The concept of intervening in a child's life *is* contemplated in the Family Code. However, the type of intervention the State argued for at trial, which was to get the child out of an abusive home environment, appears nowhere in Title III (entitled "Delinquent Children"), the title governing the proceeding held in the trial court. *See* TEX. FAM.CODE ANN. §§ 51–54 (Vernon 1994). The notion the State advanced in its argument is found in Title II of the Family Code, which is entitled "Parent and Child," and has nothing to do with adjudication proceedings. *See* TEX. FAM. CODE ANN. §§ 17.01—17.03.

■ In addition, we think there is a more important and fundamental reason why it was inappropriate for the State to discuss intervention at the adjudication hearing. Setting aside the preliminary hearings that occur in juvenile court, a child accused of delinquent conduct goes through two phases of hearings: an adjudication hearing (TEX. FAM.CODE ANN. 54.03), and a disposition hearing (TEX. FAM.CODE ANN. 54.05).[1] *The only question at the adjudication hearing is whether the child committed a delinquent act.* TEX. FAM.CODE ANN. 54.03.

The question of disposition—or intervention, to use the State's terminology—*does not arise until the disposition hearing.* TEX. FAM.CODE ANN. § 54.05. The verity of this is underscored by the fact that two separate,

---

1. This is very similar to the two phases of hearings an adult goes through at trial—the guilt/innocence phase and the punishment phase.

distinct sections in the Family Code—sections 54.03 and 54.05—govern the two separate, distinct hearings. Neither "intervention" nor "disposition" appear *anywhere* in section 54.03 (involving the adjudication hearing) until the very last paragraph of the section, which states the following:

> (h) If the finding is that the child did engage in delinquent conduct ..., the court or jury shall state which of the allegations in the petition were found to be established by the evidence. *The court shall also set a date and time for the disposition hearing.*

TEX. FAM. CODE ANN. 54.03(h). Clearly the section does not contemplate a decision on disposition until *after* the fact finder has found that the child engaged in delinquent conduct.

In conclusion, we find that the prosecutor's comments during closing argument were improper and that they were incurable by an instruction. We therefore sustain point of error number one. Because of our disposition of point one, we do not address the remaining points.

The judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

